UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-00227-DJH-RSE

**MICHAEL WILLIAMSON**                                                         **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*[1]                           **DEFENDANT**

## REPORT AND RECOMMENDATION

The Commissioner of Social Security denied Michael Williamson's ("Williamson's") application for disability insurance benefits. Williamson seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (DN 1). Both Williamson (DN 18) and the Commissioner (DN 23) have filed a Fact and Law Summary. The District Judge has referred this case to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B).[2] (DN 16).

### I. Findings of Fact

Michael Williamson is 44 years old and has a high school education. (Tr. 224, 229). Williamson is presently unemployed but has past relevant work experience as an assembler for Ford Motor Company from April 2012 to January 2013, a clerk and acting supervisor for the U.S. Postal Service ("USPS") from February 2008 to November 2011, and a part-time supervisor at

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.
[2] The District Judge's referral to Magistrate Judge Colin Lindsay in the Social Security Order (DN 16) was a typographical error.

United Parcel Service ("UPS") from May 1996 to February 2008. (Tr. 229). On July 16, 2018, Williamson protectively filed an application for disability insurance benefits ("DIB") from the Social Security Administration under Title II of the Social Security Act, 42 U.S.C. § 1382c(a)(3)("Act"), alleging disability beginning on January 2, 2013. (Tr. 203). He later amended his onset date to September 20, 2017.[3] (Tr. 43). Williamson claimed he could not perform work at substantial gainful levels due to carpal tunnel of both hands; depression; neck, thoracic, and lumbar back pain; diabetes-neuropathy of both feet; underactive thyroid; and high blood pressure. (Tr. 228). His application was denied initially on December 13, 2018 (Tr. 133) and upon reconsideration on May 8, 2019 (Tr. 138). Upon Williamson's request, a hearing was conducted in Louisville, Kentucky before Administrative Law Judge D. Lyndell Pickett ("ALJ Pickett") on January 13, 2020. (Tr. 40–58). Williamson appeared with his attorney, Shelley Davidson. (Tr. 42). ALJ Pickett issued an unfavorable decision on February 10, 2020. (Tr. 7–23).

    ALJ Pickett applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Williamson has not engaged in substantial gainful activity since September 20, 2017, the alleged onset date. (Tr. 13). Second, Williamson has the severe impairments of degenerative disc disease status post lumbar laminectomy and cervical fusion; left knee tendinitis; history of bilateral carpal tunnel syndrome status post release; diabetes; hypertension; history of asthma; obesity; depression; and anxiety. (*Id.*). Third, none of Williamson's impairments or combination of impairments meets or medically equals the severity of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id.*). ALJ Pickett then determined Williamson has the residual functional capacity ("RFC") to perform less

---

[3] Williamson previously applied for DIB alleging disability beginning on January 2, 2013, and his application was denied by an administrative law judge in a decision rendered September 19, 2017. (Tr. 62–76).

than a full range of sedentary work, as defined in 20 C.F.R. 404.1567(a), with the following limitations:

> In an eight-hour workday, he can sit for 30 minutes at a time for up to six hours, stand for 30 minutes at a time for up to two hours, and walk for 30 minutes at a time for up to two hours; he can never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds, but he can occasionally balance, stoop, and climb ramps and stairs; he can perform frequent bilateral handling, fingering, and feeling with the bilateral upper extremities, but he cannot perform overhead reaching or overhead work activity with the bilateral upper extremities, and he cannot use foot controls with the left lower extremity; he can have occasional exposure to pulmonary irritants, but he cannot have exposure to extreme heat or cold, humidity, wetness, vibration, or hazard; he can understand, carry out, and remember simple instructions, respond appropriately to supervisors and coworkers in usual work situations, and deal with changes in a routine work setting, but he should not interact with the general public and only occasionally interact with supervisors and coworkers.

(Tr. 15). Regarding his RFC analysis, ALJ Pickett cited to *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), which holds that absent evidence of improvement or deterioration in a claimant's condition, a subsequent ALJ's decision is bound by the findings of a previous ALJ. (Tr. 10).

Fourth, ALJ Pickett found Williamson unable to perform any of his past relevant work as actually or generally performed. (Tr. 22). Fifth and finally, considering Williamson's age, education, work experience, and RFC, ALJ Pickett determined there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 22). ALJ Pickett concluded that Williamson was not disabled, as defined in the Social Security Act, from September 20, 2017 through the date of his decision. (Tr. 23).

Williamson sought review of ALJ Pickett's decision. (Tr. 200–02; Tr. 37). The Appeals Council declined review on May 6, 2020. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Williamson sought judicial review from this Court. (DN 1).

II. Standard of Review

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### III. Conclusions of Law

Williamson raises three claims of error related to ALJ Pickett's RFC determination. First, he claims ALJ Pickett erred in applying *Drummond* to his case. (DN 18-1, at PageID # 697). Williamson next argues ALJ Pickett improperly evaluated his subjective symptoms. (*Id.* at PageID # 699). Lastly, Williamson suggests ALJ Pickett erroneously assessed the opinion evidence presented. (*Id.* at PageID # 704). For these reasons, Williamson submits ALJ Pickett's decision is not supported by substantial evidence.

A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt.

404, Subpt. P, App. 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases his RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

### A. Applicability of *Drummond*

Because Williamson applied previously for DIB and a final decision was issued by an ALJ on September 19, 2017, ALJ Pickett considered whether he was bound by the prior findings according to Acquiescence Ruling 98-4 and the *Drummond* standard. (Tr. 10). In *Drummond*, the Sixth Circuit determined that "where the Commissioner has made a final decision concerning a claimant's entitlement to benefits," he is bound by this determination under principles of *res judicata* absent changed circumstances. 126 F.3d 837, 842 (6th Cir. 1997). The Social Security Administration expounded on *Drummond's* holding in Acquiescence Ruling 98-4, clarifying that "changed circumstances" requires "new and material evidence" relating to the prior ALJ's finding "or a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." SSAR 98-4(6), 1998 WL 274052, at *29773 (June 1, 1998).

The Sixth Circuit recently revisited *Drummond* in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018), finding that when an ALJ considers a subsequent disability claim for a new period of disability, he is permitted to review the prior ALJ's finding but is not bound by them. In considering a successive application covering a new period of disability, the ALJ should take a "fresh look" at the new record to determine if the claimant's condition has worsened or if new evidence changes the previous analysis. *Id.* at 931. The Sixth Circuit cautioned, however, that successive applicants who offer "no new evidence or very little evidence after a failed application

5

. . . should not have high expectations about success." *Id.* at 933.

Here, the prior ALJ's decision indicated Williamson had the residual functional capacity to perform less than the full range of sedentary work. (Tr. 10). Acknowledging this, ALJ Pickett stated that he "may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim unless new and additional evidence or changed circumstances provide a basis for a different ruling." (*Id.*). Aside from the addition of mental limitations and a physical limitation regarding handling, ALJ Pickett largely adopted the prior ALJ's findings, as he found no basis to rule differently. (*Id.*).

Williamson claims ALJ Pickett incorrectly applied *Drummond* to his claim by failing to consider both new evidence and changes in circumstance. (DN 18-1, at PageID # 698). He points to evidence relating to his spine, feet, and obesity that he believes warranted a new RFC and new opinion evidence. (*Id.* at PageID # 698–99). Citing to *Earley*, Williamson also argues *Drummond* does not control because the claim considered by ALJ Pickett "alleged a later onset date and sought benefits for a later period of time." (*Id.* at PageID # 698). The Commissioner responds that although ALJ Pickett adopted a similar RFC as in the prior decision, he satisfied *Earley's* "fresh look" requirement by considering prior evidence, the prior decision, and later submitted evidence. (DN 23, at PageID # 724).

As an initial matter, ALJ Pickett did not err in applying *Drummond* to Williamson's claim. ALJ Pickett explained he must defer to the ALJ's previous findings unless "new and additional evidence or changed circumstances" would support a different finding. That he ended up largely adopting the prior ALJ's findings does not violate *Drummond*. To be sure, *Earley* advises ALJs to take a "fresh look" at a new application "while being mindful of past rulings and the record in prior proceedings." 893 F.3d at 931. But *Earley* does not mandate that the ALJ significantly alter

6

a prior determination in the record upon considering evidence for a new period of benefits.

ALJ Pickett clearly took a "fresh look" at the record and considered the evidence post-dating Williamson's alleged onset date. In an assessment spanning more than six pages, ALJ Pickett discussed the new medical evidence, including treatment for neck, back, and knee pain. (Tr. 16–17). ALJ Pickett references results from MRIs of Williamson's lumbar spine in September of 2015 and August of 2019, the latter showing "degenerative and postoperative changes [but] no acute abnormality, and no interval change since July 2018." (Tr. 17). Likewise, ALJ Pickett noted imaging of Williamson's knees "showed normal bony mineralization and well[-]maintained joint[] spaces." (Tr. 17).

ALJ Pickett also thoroughly assessed Williamson's increased BMI in accordance with the regulations, which require an ALJ to consider obesity "in determining whether a claimant has medically determinable impairments that are severe, whether those impairments meet or equal any listing, and finally in determining the residual functional capacity." (Tr. 18 (citing SSR 19-2p)). He noted Williamson "has weighed between 314–334 pounds with a BMI as high as 52," which ALJ Pickett "considered in limiting him to less than the full range of sedentary work." (Tr. 18).

Lastly, ALJ Pickett addressed Williamson's use of a cane and new evidence of edema, neuropathy, and other "feet issues" in turn. (*See* Tr. 17 ("More recent exam described positive straight leg raise, decreased sensation, and use of a cane."); Tr. 18 ("The claimant had a consultative physical exam in September 2018[.] . . . The claimant ambulated with a cane but his gait was normal."); Tr. 17 ("Exams typically described trace, minimal, or no edema of the extremities."); Tr. 16 ("He stated he goes to the podiatrist every three months for foot care."); Tr. 18 ("He had an abscess/cellulitis on the right foot arch in July 2018, which resolved with treatment . . . with podiatrist. He was advised on proper foot care in early 2019 to avoid fungal nails, which

were treated in that visit.")).

Having considered this evidence, ALJ Pickett gave significant weight to the prior ALJ's opinion because it "remain[ed] well supported and consistent with the current evidence of record." (Tr. 10). ALJ Pickett did, however, note that the prior decision did not address mental health and found that "new severe mental impairments warrant the addition of mental limitations." (*Id.*). He also added an additional physical limitation regarding handling to his RFC finding. Because ALJ Pickett thoroughly considered the new evidence following Williamson's alleged onset date and accounted for relevant changes in his RFC, the Court finds ALJ Pickett's determination neither violates *Drummond* nor *Earley* and does not recommend remand on this basis.

B.  ALJ Pickett's Evaluation of Williamson's Subjective Symptoms

As noted above, in addition to considering medical records and physician opinions in forming the RFC, an ALJ must assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a). A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled. *See* 20 C.F.R. § 404.1529(a); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). There must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to produce the pain alleged. *Walters*, 127 F.3d at 530; *Duncan*, 801 F.2d at 854. In evaluating the claimant's subjective complaints, the ALJ considers objective medical evidence, as well as other non-exhaustive factors such as evidence of daily activities, the frequency and intensity of pain, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (c)(3).

Here, ALJ Pickett found that Williamson's medically determinable impairments could

8

reasonably be expected to cause the alleged symptoms, but that his statements concerning their intensity, persistence, and limiting effects were not entirely consistent with the record evidence. (Tr. 16). Williamson argues ALJ Pickett erred in this evaluation, pointing to medical evidence that supports his subjective complaints of chronic pain, gait problems, reduced lower extremity strength, spinal and knee issues, use of a cane, and edema. (DN 18-1, at PageID # 700). Williamson also claims ALJ Pickett failed to adequately articulate his reasoning for discounting Williamson's testimony to allow for meaningful review. (*Id.*). The Commissioner responds that ALJ Pickett thoroughly considered the medical and non-medical evidence and reasonably concluded that Williamson's complaints were not entirely supported. (DN 23, at PageID # 732).

Williamson argues ALJ Pickett erred in failing to cite to SSR 96-9p, which outlines the evidence necessary to find that a cane is "medically required." (DN 18-1, at PageID # 701). For an ALJ to make such a finding, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p. Such medical documentation is not contained in the record. While there is evidence of Williamson's use of a cane, which ALJ Pickett noted, there is no evidence to establish his medically-determined need for it.[4] Likewise, there is no documentation in the record describing the specific circumstances for which Williamson must use a cane. Williamson did not meet his burden of demonstrating that a cane is "medically required," and ALJ Pickett did not err in declining to restrict his RFC to account for such a need.

Williamson also takes issue with ALJ Pickett's characterization of his diabetes treatment

---

[4] To be sure, the record evidence is somewhat contradictory on this point. Dr. Lindsay Arnold indicated in her assessment that another provider prescribed a cane, but as the Commissioner points out, no prescription can be found in the record. Moreover, Williamson admitted at the hearing that his cane was not prescribed. (Tr. 47).

9

as conservative, instead describing his condition as neither stable nor controlled. (DN 18-1, at PageID # 701). However, the record evidence shows that Williamson had a stable medication regimen and that doctors recommended diet and weight management, strengthening exercises, and routine eye and foot care to manage his diabetes, which ALJ Pickett accurately recounted. (Tr. 17–18). Williamson alleges ALJ Pickett "ignored" various abnormal findings, including edema that requires Williamson to elevate his legs, but ALJ Pickett clearly considered such abnormalities and weighed them against the record as a whole. (*See* Tr. 17 ("More recent exam described positive straight leg raise, decreased sensation, and use of a cane. . . There was tenderness (in the knee) but no instability.") *but see* Tr. 17 ("Exams with the primary care provider generally described the claimant as in no acute distress. Exams typically described trace, minimal, or no edema of the extremities. . . . He had normal sensation to light touch to all dermatomes in both lower extremities. . . . Exam with podiatrist described the claimant as alert, well hydrated, and in no distress. He had normal strength, tone, and reflexes. There was no lower extremity edema.")). Moreover, the regulations do not require an ALJ to discuss every piece of evidence submitted as long as it is clear he considered it. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *Coppage v. Berryhill*, No. 1:16-CV-00144, 2017 WL 8640926 at *4 (W.D. Ky Aug. 11, 2017) ("The ALJ's decision does not discuss every single piece of medical evidence, but she is not required to do so."). As the Commissioner notes, Williamson has not pointed to evidence ALJ Pickett did not consider or that undermines his conclusions.

Similarly, regarding his spinal issues, ALJ Pickett reasonably found Williamson "has not generally received the type of medical treatment one would expect for a totally disabled individual during the period under consideration." (Tr. 16). ALJ Pickett accurately described Williamson's

history of surgical procedures but noted his more recent complaints of neck and back pain were treated with medication, that his doctor again recommended weight loss, and that following updated imaging, a surgeon did not recommend surgery. (Tr. 17). Williamson points to complications from a spinal procedure he underwent prior to his alleged onset date as a possible reason additional surgery was not recommended. (DN 18-1, at PageID # 703). Rather, his treatment notes specifically state, "No surgical intervention needed at this time." (Tr. 531). ALJ Pickett's characterization of Williamson's spinal treatment as conservative is supported by the record evidence.

Lastly, Williamson criticizes ALJ Pickett's finding that his testimonial report of daily activities was "not as limited as alleged." (DN 18-1, at PageID # 703). Specifically, Williamson suggests ALJ Pickett should not have considered two family trips "inconsistent with disability" because they could have been "relaxing vacation[s]." (*Id.*). In assessing Williamson's reported limitations, ALJ Pickett noted Williamson's testimony that he "does not do chores often," "does not bathe himself," that at mealtime his wife must "bring him his plate of food," that he can only drive for a limited period before "having his back lock up and having left leg numbness/tingling," and, importantly, that "he does not spend time with friends or family." It was not error for ALJ Pickett to note that taking two trips (whether by car or plane) to visit family in the span of one year contradicts several of these alleged limitations. *See Smith v. Comm'r of Soc. Sec.*, No. 3:15-cv-384, 2017 WL 427359, at *11 (S.D. Ohio Feb 1, 2017) ("The ALJ did not conclude that Plaintiff could work because she could perform basic daily activities; instead, he reasonably concluded that Plaintiff's allegations of disabling symptoms and limitations were inconsistent with her activities of daily living . . . This did not constitute error.").

For these reasons, the Court does not find that ALJ Pickett erroneously evaluated

11

Williamson's subjective symptoms. He properly weighed Williamson's hearing testimony against the record evidence and his findings are well-supported. The Court does not recommend remand on this basis.

## C.  ALJ Pickett's Evaluation of Opinion Evidence

Williamson suggests ALJ Pickett erred in deeming the state agency consultants' opinions persuasive and, consequently, adopting the RFC of the prior ALJ. (DN 18-1, at PageID # 704). Relying on *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009), Williamson suggests ALJ Pickett failed to consider that the state agency findings were not "based on a review of a complete case record." (*Id.* at PageID # 704–05). Williamson also criticizes ALJ Pickett's finding that the opinions of Drs. Lindsay Arnold and James Eisenmenger were unpersuasive. (*Id.* at PageID # 705).

The Commissioner counters that ALJ Pickett appropriately considered the state agency opinions, which were consistent with objective medical findings and accounted for evidence that post-dated the 2017 ALJ decision. (DN 23, at PageID # 732). Likewise, the Commissioner positions that ALJ Pickett properly accepted Dr. Arnold's consultative opinion as somewhat persuasive, and properly deemed Dr. Eisenmenger's treating opinion entirely unpersuasive. (*Id.* at PageID # 734).

The new regulations for evaluating medical opinions are applicable here since Williamson's claim was filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c (2017). Under the new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ must consider "supportability, consistency, relationship [with the claimant], specialization, and other

factors" when determining the persuasiveness of an opinion. 20 C.F.R. 404.1520c(c)(1)–(5). But the ALJ need only explain how he considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion(s) will be. 20 C.F.R. § 404.1520c(c)(1). The more consistent the medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(2).

Williamson's argument surrounding the state agency consultants' opinions is rooted in his claim that *Drummond* is inapplicable to this case and ALJ Pickett should not have adopted any of the prior ALJ's findings. As discussed above, this position fails. Moreover, while Williamson is correct that the prior ALJ's RFC determination did not, and could not, account for several later-submitted findings, the state agency consultants did consider them. As the Commissioner notes, the state agency consultants considered his 2018 consultative examination, his complaints of diabetic neuropathy, the results of a monofilament examination, his increased BMI of 57 and obesity, and other self-reported limitations. (Tr. 101, 121–22). Further, ALJ Pickett independently assessed the newly-submitted evidence and did not rely solely on the state agency consultants' findings in making his RFC determination. The undersigned finds no error in ALJ Pickett's consideration of the state agency opinions.

For his position regarding assessment of Dr. Arnold's and Dr. Eisenmenger's opinions, Williamson merely cites to evidence in the record supporting his need for a cane, restrictions regarding leg elevation, and limitations for sitting, standing, and walking. (DN 18-1, at PageID # 705). He does not suggest ALJ Pickett's assessment was unsupported, but offers that evidence

13

exists to support a more restrictive RFC. First, it is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived"); *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007) ("We decline to identify and address the arguments that Petitioner could have made but did not, and instead find that he has waived any possible challenge[.]"). Since Williamson offers these contentions in a single, undeveloped paragraph, the undersigned deems them waived.

Regardless, Williamson's argument would fail. An ALJ's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). While there might be evidence in the record that would support a contrary conclusion, ALJ Pickett thoroughly considered Williamson's treatment records and properly discounted unsupported and/or inconsistent opinions. ALJ Pickett discussed Dr. Eisenmenger's findings at length and articulated with particularity his reasons for discounting them. (Tr. 20–21 ("This opinion does not cite any objective support for these extreme limitations. It cites only the claimants 'symptoms' leaving the checklist section of abnormal findings blank due to 'lack of info.' . . . His treating notes also do not document any objective exam findings that would support the extreme limits assessed. . . The opinion is not consistent with the other evidence of record.")).

As for Dr. Arnold's opinion, ALJ Pickett found it "persuasive to the extent it precludes heavy work and supports exertional and postural limits," as these finding were "well supported by his exam of the claimant" and "consistent with the other evidence of record including the history

14

of surgery and ongoing conservative treatment." (Tr. 20). This determination is consistent with the record evidence and adequately articulated in accordance with the regulations. Accordingly, the Court finds ALJ Pickett's analyses of the opinions of Drs. Arnold and Eisenmenger are supported by substantial evidence in the record and comport with the applicable regulations. The Court, therefore, does not recommend remand on this basis.

## RECOMMENDATION

For the above-stated reasons, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED.**

Regina S. Edwards, Magistrate Judge
United States District Court

May 18, 2022

## NOTICE

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:        Counsel of Record